IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT LEWIS,                )
                             )
        Plaintiff,            )
                             )
    v.                       )    1:19CV418
                             )
HUBERT PETERKIN, et al.,      )
                             )
        Defendants.           )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Robert Lewis, a pro se prisoner, seeks monetary damages against several defendants pursuant to 42 U.S.C. § 1983 for alleged denial of adequate treatment for serious medical needs, negligence, and medical malpractice while Plaintiff was a pre-trial detainee at the Hoke County Detention Center (hereinafter "HCDC") between July 8, 2015 and May of 2016. (*See generally* Compl., Docket Entry 1.) Defendants Sheriff Hubert Peterkin and Hoke County (hereinafter "Moving Defendants") have filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Docket Entry 12.) Plaintiff filed a response (Docket Entry 20) and Moving Defendants thereafter replied (Docket Entry 21). For the reasons stated herein, the Court recommends that the motion to dismiss be denied.

**I. BACKGROUND**

Before the instant Complaint was filed, on October 30, 2017, Plaintiff filed a Complaint in this district against Defendants Hoke County, Sheriff Hubert Peterkin, Nekia Revels, ABL Food Service, Southern Health Partners, Kevin (ABL Food Service Manager), and Bernice

1

(ABL Food Service Manager). *See Lewis v. Hoke County, et. al.*, Civil Action No. 1:17-cv-987-WO-JLW (M.D.N.C.) (hereinafter "*Lewis I*"). In that Complaint, Plaintiff contends that his federal constitutional rights were violated while he was a pre-trial detainee at Hoke County Detention Center between October 19, 2014 and February 8, 2017. (*Lewis I*, Docket Entry 2, at 2.) Plaintiff summarizes his claims in *Lewis I* as allegations of the "denial of medical care; inadequate food; medical diet; [and] unsafe food conditions" in connection with his diabetes. (*Id.* at 6.)[1] More specifically, Plaintiff alleges that when he was initially placed at the HCDC, he "suffered immensely" because he was delayed in receiving his medication for diabetes since the facility did not have medical staff available to evaluate him. (*Id.* at 16.) He further alleges that he received food for non-diabetics (pastas, breads, rice, potatoes, processed meats, cakes, and sweet tea) although he was informed that he would be on appropriate medical diet for his diabetes. (*Id.* at 17.) Plaintiff also states that the food was prepared and packaged in unsafe conditions, and served undercooked. (*Id.* at 18-19.)

In March of 2016, Plaintiff continued to complain of food intake that was seriously affecting his diabetes. (*Id.* at 22.) His medical diet then changed and Plaintiff states that he was fed the same foods for every meal for nearly a year "as a form of punishment for his relentless complaints about his medical diet." (*Id.* at 23.) Plaintiff further alleges that the medical staff were aware that Plaintiff was not receiving adequate foods for his diet. (*Id.* at 26.) In his prayer for relief, Plaintiff asks for injunctive relief and monetary damages for pain and suffering. *Lewis I* is currently pending before this Court.

---

[1] Plaintiff filed an Amended Complaint in *Lewis I*, which incorporates the majority of paragraphs in the original Complaint. *See Lewis I*, Docket Entry 10.

On April 19, 2019, nearly a year and a half after *Lewis I* was filed, Plaintiff filed the Complaint in the instant matter against some of the same Defendants including Hubert Peterkin, Hoke County, Nachia Revels, and Southern Health Partners. *See Lewis v. Peterkin, et. al.*, 19-cv-418-WO-JLW (M.D.N.C.) (hereinafter "*Lewis II*"). Named Defendants in *Lewis II* also include Nurse Kathyrn McKenzie, and Nurse Jane Doe.[2] In *Lewis II*, Plaintiff alleges the "denial of adequate medical treatment for serious medical needs, negligence, and medical malpractice" concerning the treatment of—or lack thereof—serious eye complications between July 8, 2015 and May 2016. (*Lewis II*, Docket Entry 1.) Again, Plaintiff alleges that his federal constitutional rights were violated while he was a pre-trial detainee at the HCDC. (*Id.*) More specifically, Plaintiff alleges that in January of 2015, he began experiencing a burning sensation in his eyes that gradually intensified and caused his eyes to be severely strained and sore. (*Id.* at 19.) Plaintiff sought medical attention at the HCDC in July of 2015, which medical staff informed Plaintiff that there was nothing wrong with his eyes. (*Id.* at 19-20.) Plaintiff disagreed and reiterated that there was white growth matter developing near the outer pupil of his left eye. (*Id.* at 20.) The nurse, Defendant McKenzie, then asked two jail officers if they could see anything wrong with Plaintiff's eye, which both stated no. (*Id.* at 20-21.) At this time, Plaintiff was fearful of his health because neither Nurse McKenzie nor the officers were qualified to diagnose or treat Plaintiff's eye concerns. (*Id.* at 21.) Plaintiff then

---

[2] The Court notes that it appears that Defendants Kathryn McKenzie and Jane Doe (Nurse) have not been named on the Court's docket inadvertently. However, they are identified as defendants in Plaintiff's Complaint. (*See* Comp. at 16-17.) A summons has not yet been issued for Defendant McKenzie.

3

requested to see a doctor, but was denied because there was not one on duty. (*Id.*) Plaintiff alleges that he also requested medicine at that time but was denied. (*Id.* at 22.)

After returning to his housing unit, Plaintiff filed several grievances regarding denial of treatment for his eye injury which were ignored by prison officials. (*Id.* at 22-23.) When Defendant Revels finally responded to Plaintiff's grievance, her concern was getting new glasses for Plaintiff rather than allowing him to be treated by a physician. (*Id.* at 24-25.) Plaintiff continued to complain of worsening eye irritations until he was finally transported to an eye clinic on December 15, 2015. (*Id.* at 26.) After his evaluation, Plaintiff was given a prescription and also a new pair of glasses. (*Id.* at 27.) The HCDC did not fill the prescription because it was not covered under the insurance. (*Id.* at 27.) Defendant McKenzie instead gave plaintiff generic over-the-counter eye drops. (*Id.* at 28.)

Plaintiff subsequently filed another grievance regarding Defendant McKenzie's actions. (*Id.* at 29.) Plaintiff did receive a response from Defendant Nurse Jane Doe, whom indicated that the physician permitted Plaintiff's use of the over-the-counter eye drops. (*Id.* at 30.) After voicing his concern to Defendant Janes Doe regarding the ineffectiveness of the generic eye drops, Plaintiff was given another brand of generic eye drops which he alleges was ineffective. (*Id.* at 31-32.) Plaintiff eventually was treated by the physician a second time, and his eyes begin to heal in May of 2016. (*Id.* at 33.)

On June 16, 2019, the Moving Defendants, pursuant to Rule 12(b)(6), moved to dismiss *Lewis II* in its entirety because, as Moving Defendants assert, Plaintiff's claims in *Lewis I* and *Lewis II* are duplicative and amount to impermissible "claim splitting." (Docket Entry 12.) The undersigned disagrees.

## II. DISCUSSION

Moving Defendants argue that dismissal of *Lewis II* is appropriate pursuant to the well settled rule against claim splitting. (Docket Entry 12.) "The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 Fed.Appx. 256, 265 (4th Cir. 2008)). As such, "when a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 329 F. Supp. 2d 574, 579 (D. Md. 2004) *(quoting Curtis v. Citibank, N.A.,* 226 F.3d 133, 138-39 (2d Cir. 2000)). "When determining whether the second suit duplicates the first, the court considers (1) whether the second suit 'arises out of the same operative facts,' and (2) whether the 'interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit.'" *Southard v. Wicomico Cty. Bd. of Educ.*, No. CIV. SAG-15-61, 2015 WL 4993721, at *4 (D. Md. Aug. 20, 2015) (quoting *Jenkins v. Gaylord Entm't Co.,* 840 F.Supp.2d 873, 883 (D.Md. 2012)); *see also Superior Performers, Inc. v. Family First Life, LLC*, No. 1:14CV382, 2015 WL 471389, at *4 (M.D.N.C. Feb. 4, 2015) (unpublished). When faced with duplicative actions, the district court may "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis*, 226 F.3d at 138.

Here, there is no dispute that some Defendants (Hubert Peterkin, Hoke County, Nachia Revels, and Southern Health Partners) are named parties in both *Lewis I* and *Lewis II*. However, both matters do have other named Defendants whose separate actions gave rise to

5

Plaintiff's allegations in both their respective suits, which include ABL Food Service and "Kevin" in *Lewis I*, and Kathryn McKenzie and Nurse Doe, in *Lewis II*. The named Defendants, therefore, are not completely identical in both cases.

More importantly, the claims in *Lewis II* do not appear to "arise out of the same transaction or series of transactions" as the claims in *Lewis I*. Although Moving Defendants correctly assert that the claims in *Lewis II* occurred at the same facility and overlap a portion of the same time span as the claims in *Lewis I*, such claims are sufficiently distinct and do not arise from the same set of core facts. The facts are thoroughly set forth above, but boiled down to its essentials, Plaintiff alleges in *Lewis I* that Defendants were indifferent to his medical needs concerning improper treatment of his diabetes (medications and specific food intake), whereas in *Lewis II*, Plaintiff alleges deliberate indifference in connection with the treatment of his eyes. *Lewis II* focuses significantly on the conduct of Nurse McKenzie and Jane Doe. Because of the distinctions, these actions should proceed separately as the doctrine of claim splitting is not applicable here.

Even when considering the interests of judicial economy and the fact that claim splitting is "premised on the district court's ability to manage its own docket," *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016), there is no apparent reason to consolidate both actions or stay *Lewis II*. The undersigned further notes that the cases are at varying procedural stages—*Lewis I* is nearing the close of discovery while *Lewis II* is still in its early stages in which discovery has not commenced. Although both cases may ultimately yield some overlapping discovery, the undersigned concludes that the interests of judicial economy warrant neither dismissal or a stay of *Lewis II*, nor consolidation of *Lewis I* and *II*.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Moving Defendants' Motion to Dismiss (Docket Entry 12) be **DENIED.**

_____
Joe L. Webster
United States Magistrate Judge

November 22, 2019
Durham, North Carolina