# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROBERT LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV418 |
| | ) | |
| HUBERT PETERKIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert Lewis, a *pro se* prisoner, seeks monetary damages against several defendants pursuant to 42 U.S.C. § 1983 for alleged denial of adequate treatment for serious medical needs, negligence, and medical malpractice while Plaintiff was a pre-trial detainee at the Hoke County Detention Center (hereinafter "HCDC") between July 8, 2015 and May 2016. (*See generally* Compl., Docket Entry 1.) Defendant Sheriff Hubert Peterkin ("Sheriff Peterkin"), Nachia Revels ("Major Revels") (collectively "HCDC Defendants"), and Hoke County filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Entry 27.) Plaintiff filed a response (Docket Entry 30) and Defendants thereafter replied. (Docket Entry 31.) For the reasons stated herein, the Court recommends that the motion for judgment on the pleadings be granted in part and denied in part.

Case 1:19-cv-00418-WO-JLW   Document 32   Filed 08/14/20   Page 1 of 22

## I. BACKGROUND

Plaintiff filed the instant Complaint on April 17, 2019[1] pursuant to 42 U.S.C. § 1983 seeking monetary damages against several defendants for inadequate treatment for serious medical needs, negligence, and medical malpractice related to an eye injury while he was detained at HCDC between July 8, 2015 and May 2016. (Compl. at 19-41.)[2] Plaintiff names Sheriff Peterkin, Major Revels, Hoke County, Southern Health Partners, Kathryn McKenzie ("Nurse McKenzie"), and Jane Doe as defendants. (*Id.* at 16.) Plaintiff asserts that Defendants' actions were in violation of the Eighth and Fourteenth Amendments (*see id.* at 36-39) and that he was also subject to negligence and medical malpractice under North Carolina law. (*Id.* at 39-41.)

Beginning early 2015, Plaintiff, a diabetic, started experiencing "a burning sensation in his eyes that gradually intensified as the months passed" while in detention at HCDC. (*Id.* at 19.) By June 2015, Plaintiff alleges that his eyes worsened prompting him to seek medical attention from prison officials. (*Id.*) During a sick call visit on July 8, 2015, he explained to Nurse McKenzie that his eyes were "severely strained and extremely sore, and that he had noticed some white growth matter developing near the outer edges of his left pupil." (*Id.*)

---

[1] Plaintiff's Complaint was time-stamped as filed by the Court on April 19, 2020. However, Plaintiff is entitled to benefit from the prison mailbox rule. In *Houston v. Lack*, the Supreme Court articulated such rule, holding that a *pro se* prisoner's legal papers are deemed filed "the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk." 487 U.S. 266, 275 (1988). Plaintiff's Complaint is signed and dated as of April 17, 2019 (*see* Docket Entry 1), and the postmark on the accompanying envelope appears to be April 17, 2019 (*see* Docket Entry 1-1). Thus, Plaintiff's Complaint was filed effective April 17, 2019.

[2] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Nurse McKenzie visually examined Plaintiff's eyes but did not see anything wrong with them. (*Id.* at 19-20.)

After protest from Plaintiff regarding her assessment, Nurse McKenzie had two "jailers", Corporal Atkins and Officer Campbell, look at Plaintiff's eyes. (*Id.* at 20-21.) Both stated that they saw nothing wrong with Plaintiff's eyes. (*Id.*) Plaintiff was shocked and "afraid for his health" because he knew that neither of the three individuals were medically qualified to diagnose or treat injuries related to his eyes. (*Id.* at 21.) Plaintiff then asked Nurse McKenzie if he could be seen by a doctor and she denied this request because HCDC's "medical department does not have [a doctor]," only a physician's assistant who visits the unit once a week. (*Id.*) Nurse McKenzie further stated that even if HCDC did have a doctor, she would not allow Plaintiff to see him "because there [was] nothing wrong with [Plaintiff's] eyes." (*Id.* at 22.)

Consequently, Plaintiff filed a grievance on that same day, July 8, 2015, regarding his "denied treatment for his severe eye injury and pain." (*Id.*) Plaintiff alleges that he never received a reply, nor was he given any proof that his grievance was ever filed. (*Id.*) Therefore, Plaintiff filed a subsequent grievance on July 29, 2015, which stated that he had not received a response regarding his previous grievance and again requested that he be seen by a professional eye doctor. (*Id.* at 12, 23). According to the prison's reply to the grievance on July 31, 2015, Plaintiff was instructed to put in a sick call and go see the nurse. (*Id.* at 12.) Plaintiff alleges that the grievance was ignored by Major Revels and instead answered by a "lower-level staff member who had no authority to correct violations to Plaintiff's rights, and did not even address any of the issues Plaintiff grieved upon." (*Id.* at 23.)

3

On August 24, 2015, Plaintiff filed another grievance addressed to Major Revels and Sheriff Peterkin stating that he was without prescription eye glasses, and, as a result, his eyes were sore and severely strained. (*Id.* at 13, 23.) Additionally, he reiterated his dissatisfaction with Nurse McKenzie's assessment of his eyes and his desire to see a professional eye doctor. (*Id.* at 13.) In response to the grievance, Major Revels stated that if Plaintiff gave him the name and location of his eye doctor, they could contact the eye doctor in reference to a new prescription or Plaintiff could have a family member bring him a pair of glasses. (*Id.* at 13, 24.) Plaintiff alleges that this response demonstrates that (1) Major Revels had the authority to instruct Nurse McKenzie to send Plaintiff to an outside doctor without being compelled to do so months later; (2) Major Revels knew HCDC had no doctor on staff and that Nurse McKenzie was not qualified to examine Plaintiff's eyes; and (3) both Major Revels and Nurse McKenzie knew that something was wrong with Plaintiff's eyes such that he required immediate treatment. (*Id.* at 24.) Plaintiff further states that Major Revel's response was focused solely on securing Plaintiff's eye glasses rather than focusing on his eye pain. (*Id.* at 25.)

Plaintiff filed two more grievances on September 1, 2015 and September 15, 2015 which restated his concerns regarding his eye condition and also mentioned that his eye issues might not have to do with the fact that he needs glasses but could be something related to his diabetes. (*Id.* at 14, 25.) Plaintiff states that there was no response to his grievance, nor any immediate action taken to remedy his concerns. (*Id.* at 26.)

By this time, Plaintiff alleges that his pain was getting worse. (*Id.*) After complaining of his increasing pain "to whoever would listen," (*id.*), a jail official, Officer Pinix, took notice

4

and spoke with Major Revels about Plaintiff's condition and he was seen by Dr. Charles Inman at the Raeford Eye Clinic on December 15, 2015. (*Id.*) After examination, Dr. Inman informed Plaintiff that the white growth matter near his left pupil would not be harmful unless it began to spread into the pupil area. (*Id.* at 27.) He diagnosed Plaintiff with "chronic dry eye and chronic eye allergies" and prescribed him with an anti-inflammatory eyedrop, "Pataday," and new eye glasses. (*Id.*) About a week later Plaintiff alleges that he was given his new eyeglasses but not the prescribed eye drops. (*Id.*)

Plaintiff inquired about his missing medication and was told that Nurse McKenzie stated that the Pataday eyedrops prescribed by Dr. Inman was not covered by Southern Health Partner's insurance. (*Id.* at 27-28.) Therefore, Plaintiff alleges that he filed another grievance addressed to Major Revels and Sheriff Peterkin around mid-January 2016 regarding Nurse McKenzie's refusal to purchase Plaintiff's prescribed medication. (*Id.* at 28.) According to Plaintiff, Major Revels ignored this grievance as well. (*Id.*)

Plaintiff again confronted Nurse McKenzie about his eye issue and on February 11, 2016, Nurse McKenzie gave Plaintiff a box of "Care All" generic over-the-counter eyedrops as a substitute for the prescribed Pataday. (*Id.* at 28-29.) On the same day, Plaintiff filed his last grievance which stated that he was being denied the prescription given by Dr. Inman and that the Care All eye drops did not provide relief. (*Id.* at 15, 29.) An unidentified nurse, "Jane Doe," responded by stating that the over-the-counter medication given to Plaintiff was approved by Dr. Inman. (*Id.* at 15, 30-31.)

Plaintiff tried the Care All eye drops but it did not relieve his pain. (*Id.* at 32.) Thus, when a new nurse, Nurse Dixon, was hired to replace Nurse McKenzie in March 2016,

Plaintiff told her that his eyes were in great pain and that he never received his prescription eye drops. (*Id.*) Nurse Dixon then contacted Raeford Eye Center Clinic and scheduled Plaintiff another appointment with Dr. Inman, which took place on March 31, 2016. (*Id.*)

During the visit, the Plaintiff alleged that Dr. Inman said that he never gave anyone permission to substitute the Pataday with Care All eye drops. (*Id.*) Dr. Inman then prescribed a cheaper eye drop called "Fluorometholone" for Plaintiff. (*Id.* at 33.) Plaintiff states that it took "around 3-weeks into April" for HCDC medical staff to order and bring Plaintiff the newly prescribed medication and "another 3-weeks for his eyes to heal and feel better." (*Id.*)

## II. DISCUSSION

Defendants assert that the Court should grant their motion for judgment on the pleadings because: (1) Plaintiff's claims are barred by the applicable three-year statute of limitations; (2) Plaintiff states no violation of his constitutional rights and that Defendants are entitled to qualified immunity; (3) Plaintiff failed to exhaust his administrative remedies; (4) Defendants are entitled to governmental immunity and public officer's immunity in regards to Plaintiff's pendent state law tort claims; and (5) Plaintiff's state medical malpractice claim fails to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. (Docket Entry 28.)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, the Court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the

moving party is entitled to judgment as a matter of law. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a Rule 12(b)(6) motion to dismiss, federal courts apply the same standard in considering both motions. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Burbach*, 278 F.3d at 405-06; *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards*, 178 F.3d at 243. A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face") (emphasis in original) (internal citation and quotation marks omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he

7

is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

Moreover, *pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the Court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## A. HOKE COUNTY

At the outset, the Court notes that Hoke County is not a proper party to this action. The alleged deliberate indifference conduct occurred at HCDC and involves Sheriff Peterkin, his deputies and medical officials contracted by HCDC. "In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the county because a sheriff is elected by the people, not employed by the county." *Hines v. Johnson*, No. 1:19CV515, 2020 WL 1516397, at *4 (M.D.N.C. Mar. 30, 2020) (unpublished). Plaintiff asserts that "Hoke County is responsible for the policies and duty of care of the inmate population of [HCDC]" (Compl. at 18), however this attempt to attach liability to Hoke County through the actions of the Sheriff's Office employees is improper. *Landry v. North Carolina*, No. 3:10-CV-0585-RJC-DCK, 2011 WL 3683231, at *4 (W.D.N.C. Mar. 11, 2011) (unpublished), *report and recommendation adopted,* No. 3:10-CV-585-RJC-DCK, 2011 WL 3682788 (W.D.N.C. Aug. 23, 2011) (unpublished).

Indeed, "the sheriff has the sole statutory responsibility for the care and custody of the inmates at the county jail." *Vaught v. Ingram,* 2011 WL 761482 at *4 (E.D.N.C. Feb. 24, 2011)

8

(unpublished) (citing N.C. Gen. Stat. § 162-22). "This authority may not be delegated to another person or entity." *Id.* (citing N.C. Gen. Stat. § 162-24). Therefore, as Plaintiff has not alleged facts in the Complaint that would implicate Hoke County, all claims against Hoke County should be dismissed. *Hines*, 2020 WL 1516397, at *4. *See also Bowman v. Reid*, No. 5:14CV179-RLV, 2015 WL 4508648, at *3 (W.D.N.C. July 24, 2015) (unpublished) (collecting cases) ("The harms that Plaintiffs allege were done to them were done exclusively by the Sheriff and his deputies, not by [defendant] County."), *aff'd sub nom. Gosnell v. Catawba Cty.*, 646 F. App'x 318 (4th Cir. 2016); *Stephney, Jr. v. Columbus Cty.*, No. 5:05-CT-606-FL, 2006 WL 4664318, at *1 (E.D.N.C. Aug. 22, 2006) (unpublished) (county defendant not a proper party to 1983 action alleging inmate assault at county detention center), *aff'd sub nom. Stephney v. Columbus Cty.*, 210 F. App'x 289 (4th Cir. 2006); *Woodside v. Iredell Cty.*, No. 5:04 CV 95 V, 2006 WL 1582391, at *2 (W.D.N.C. June 2, 2006) (unpublished) ("North Carolina law appears to preclude county liability for most actions of sheriff's department personnel. In other words, North Carolina law draws a distinction between a sheriff and the county in which he works, and the respective liability of each for the alleged misconduct of individual deputies or jailers.").

## B. STATUTE OF LIMITATIONS

HCDC Defendants[3] first argue that "any claims by the Plaintiff that are premised upon events that occurred prior to April 18, 201[6] are barred by the three-year statute of limitations applicable to the Plaintiff's claim." (Docket Entry 28 at 9.) "While affirmative defenses

---

[3] As the undersigned has recommended dismissal of Hoke County as an improper party, the remainder of the instant recommendation will consider Defendants Sheriff Peterkin and Major Revels, collectively HCDC Defendants.

ordinarily cannot be raised on a motion to dismiss, a defendant may properly raise an affirmative defense of statute of limitations through Rule 12(b)(6) when the facts supporting the defense plainly appear on the face of the Complaint." *Tunstall v. Perry*, No. 1:15CV226, 2018 WL 1320265, at *3 (M.D.N.C. Jan. 5, 2018) (unpublished); *see also Tollison v. B & J Mach. Co.*, 812 F. Supp. 618, 619 (D.S.C. 1993) ("A motion under Rule 12(c) is an appropriate procedure when the statute of limitations is alleged to provide an effective bar against a plaintiff's claims.").

The statute of limitations in this case is three years. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985) (holding that, in section 1983 actions, state statute of limitations for personal injury applies); *Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year statute of limitations for personal injuries to section 1983 actions); *Ellis v. Unch-Chapel Hill*, No. 1:04CV584, 2004 WL 2125674, at *1 (M.D.N.C. Sept. 16, 2004) (unpublished) ("[M]edical malpractice claims in North Carolina are subject to a three year statute of limitations."); N.C. Gen. Stat. §§ 1-15, 1-52 (establishing three-year statute of limitations for personal injury and medical malpractice). For § 1983 claims, a plaintiff's cause of action accrues, and the statute of limitations runs, from the date on which he "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

Here, Plaintiff's Complaint was filed April 17, 2019, thus HCDC Defendants contend that any claims premised on actions occurring prior to April 18, 2016 would be barred by the statute of limitations. In response to HCDC Defendants' motion, Plaintiff contends that his claims survive dismissal under the continuing wrong doctrine. (Docket Entry 30 at 6.)

Case 1:19-cv-00418-WO-JLW   Document 32   Filed 08/14/20   Page 10 of 22

A continuing wrong or continuing violation occurs when there is an "ongoing policy or pattern of violations rather than discrete acts." *Hartquist v. Emerson Elec. Co.*, No. 1:11CV1067, 2016 WL 1312028, at *7 (M.D.N.C. Mar. 31, 2016) (internal citation and quotations omitted) (unpublished). "[C]ontinual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." *Smith v. Noftle,* No. 1:13CV708, 2015 WL 3675740, at *6 (M.D.N.C. June 12, 2015) (internal citation and quotations omitted) (unpublished); *see also Hartquist;* 2016 WL 1312028, at *7. The Fourth Circuit explained:

> If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.

*Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991) (citation omitted). To allege a claim for deliberate indifference under the continuing violation doctrine, "a plaintiff must (1) identify a series of acts or omissions that demonstrate deliberate indifference to his serious medical need(s); and (2) place one or more of these acts or omissions within the applicable statute of limitations for personal injury." *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018). Importantly, "the statute of limitations does not begin to run on such a claim for a continuing violation of a prisoner's Eighth Amendment rights until the date, if any, on which adequate treatment was provided." *Id.*

Here, at this juncture with the limited record before the Court, the undersigned cannot draw a proper conclusion on the application of the continuing violation doctrine. Plaintiff

11

must allege one or more acts on the part of Defendants within three years of the filing of the Complaint—in this case, between April 17, 2016 and April 17, 2019. Plaintiff's Complaint alleges continual inadequate treatment of his eye injury, and unnecessary delay thereof, from July 8, 2015 through May 2016. (*See* Compl. at 19-35.) He alleges that he was seen by Dr. Inman on March 31, 2016 but had to wait approximately three weeks into April 2016 to receive the prescribed medication. (*Id.* at 32-33.) Critical here however, is the exact date in which Plaintiff received his prescribed medication thereby triggering the date in which the statute of limitations began to run.[4] *DePaola*, 884 F.3d at 487 (statute of limitations begins when adequate treatment is received). Although Plaintiff states that he saw Dr. Inman on March 31, 2016, the Complaint does not allege the exact date when the prescribed medication was ordered or when Plaintiff actually received it.[5] Therefore, construing Plaintiff's Complaint liberally, it is unclear whether any of the alleged deliberate indifference conduct happened on or after April 17, 2016. As the Court cannot adequately assess the continuing violation doctrine at this time, HCDC Defendants should not be entitled to judgment on the pleadings on this issue. *See Wilson v. United States*, No. 3:18-CV-00890, 2019 WL 6869092, at *15 (S.D.W. Va. Aug. 1, 2019) (unpublished) ("At this point in the litigation, the facts are not sufficiently developed for the

---

[4] Indeed, at the core of Plaintiff's Complaint is his contention that HCDC Defendants engaged in unreasonable delay in treating his medical condition. Such delay may give rise to a claim for deliberate indifference. *See Latson v. Clarke*, 346 F. Supp. 3d 831, 861 (W.D. Va. 2018), aff'd, 794 F. App'x 266 (4th Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("Prison officials who are not medical providers can exhibit deliberate indifference to serious medical needs by intentionally denying access to care or intentionally interfering with prescribed treatment."); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) ("unusual length of the delay provides a reasonable basis for the inference" of deliberate indifference to a serious medical need).

[5] Defendants' Answer provides no further clarity on this issue. (*See* Answer, Docket Entry 26 at 19 (referring to Plaintiff's Complaint ¶ 71 under Statement of Claim) (Defendants "lack[ing] knowledge or information" regarding Plaintiff's allegations surrounding receipt of prescribed medication)).

12

Court to determine the applicability of the 'continuing violation' doctrine to Plaintiff's Eighth Amendment claims."), *report and recommendation adopted*, No. CV 3:18-0890, 2019 WL 4201578 (S.D.W. Va. Sept. 5, 2019) (unpublished). On a more fully developed record, HCDC Defendants should be permitted to reassert their defense.

## C. VIOLATION OF CONSTITUTIONAL RIGHTS

Next, HCDC Defendants contend that Plaintiff's § 1983 claims fail as a matter of law because there was no violation of his constitutional rights. (Docket Entry 28 at 11-13.) "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment.*"* *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). Thus, deliberate indifference to a serious medical need of a pretrial detainee is a violation of the Due Process Clause. *Id.* "Historically, the United States Court of Appeals for the Fourth Circuit has applied the same analysis to Section 1983 deliberate indifference claims under the Fourteenth Amendment as under the Eighth Amendment." *Durand v. Charles*, No. 1:16CV86, 2018 WL 748723, at *11 (M.D.N.C. Feb. 7, 2018), *subsequently aff'd*, 733 F. App'x 116 (4th Cir. 2018).

Considering its similar standard, the Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Since *Estelle*, courts have developed a two-part test for evaluating Section 1983 claims alleging Eighth Amendment violations as to medical care; courts first evaluate whether there was evidence of a serious medical need and if so, then consider whether a defendant's response to that need amounted to deliberate indifference. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In the prison context, a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss. In order to prove deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a subjective standard, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 837-38; *see also Parish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Additionally, the individual defendant must realize his actions were inappropriate as a result of his actual knowledge of risk to the inmate. *Parish*, 372 F.3d at 303. This standard is more than mere negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer*, 511 U.S. at 836.

It is also well settled that negligence or medical malpractice are not sufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105-06. "The bottom line is that prison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals." *Pulliam v. Super. of Hoke Correct.*, 1:05CV1000, 2007 WL 4180743 *6 (M.D.N.C. Nov. 20, 2007) (unpublished).

Here, Plaintiff's Complaint essentially attributes HCDC Defendants' deliberate indifference conduct to their lack of having qualified medical staff available to him to address his eye issues, their lack of response to his grievances regarding his multiple claims that he was not receiving his medication prescribed by Dr. Inman, and their authorization of unreasonable delay in Plaintiff's treatment. (*See* Compl. at 34, 36, 39.) HCDC Defendants' argument is

14

centralized on events (or the lack thereof) on or after April 18, 2016 as they assume that anything occurring prior to such time is barred by the statute of limitations. (*See* Docket Entry 28 at 11("during the relevant period of time from April 18, 2016 until 'the middle of May 2016' " ).) However, as explained above, whether or not the continuing violation doctrine applies in this matter will determine the relevant time period.

Therefore, taking Plaintiff's Complaint in its entirety as true at this juncture, the Court cannot conclude as a matter of law that no constitutional violation occurred. If HCDC Defendants were aware of Plaintiff's condition, had no qualified medical staff available to him, and knew of or authorized the unreasonable delay in adequate treatment for Plaintiff's eye, this conduct may give rise to a claim of deliberate indifference to a serious medical need. *Latson*, 346 F. Supp. 3d at 861; *Loe*, 582 F.2d at 1296. Contrary to HCDC Defendants' contentions, such allegations extend well beyond a mere disagreement with the choice of treatment.

Moreover, HCDC Defendants' argument that Plaintiff's chronic dry eye medical diagnosis is not a serious medical need is unpersuasive. While HCDC Defendants rely upon several unpublished district court cases to support their argument that dry eye conditions are not serious enough to trigger constitutional protection (*see* Docket Entry 31 at 5-6), the undersigned cannot make such a finding as a matter of law. Indeed, the Complaint alleges that, as a result of his eye condition and the delay in treatment, Plaintiff suffered from severe and chronic headaches, blurry and weak vision, and pain such that he could not withstand the touch of a face cloth when washing his face. (*See* Compl. at 26.) Dr. Inman found Plaintiff suffered from chronic dry eye and chronic eye allergies, resulting in both prescription eye

15

drops and a new prescription for eyeglasses for treatment. (*See id.* at 27; *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 2010 (4th Cir. 2017) (citation omitted) (stating that a serious medical need is a condition "diagnosed by a physician as mandating treatment")). As such, HCDC Defendants' motion for judgment on the pleadings should be denied on this ground.[6]

## D. QUALIFIED IMMUNITY

HCDC Defendants also contend that they are entitled to qualified immunity and thus their motion for judgment on the pleadings should be granted. (Docket Entry 28 at 13-16.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for

---

[6] The undersigned notes that official capacity claims against HCDC Defendants are actually claims against the office of the Sheriff of Hoke County. *McNeill v. Scott*, No. 1:09CV698, 2015 WL 4946542, at *7 (M.D.N.C. Aug. 19, 2015) (unpublished), *report and recommendation adopted,* No. 1:09CV698, 2015 WL 5599194 (M.D.N.C. Sept. 22, 2015) (unpublished). To state an official capacity claim against HCDC Defendants, Plaintiff must plead "(1) the existence of an official policy or custom [of the Sheriff's Office]; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Pettiford v. City of Greensboro,* 556 F.Supp.2d 512, 530 (M.D.N.C. 2008) (citation omitted); *see also Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 267 (M.D.N.C.), *on reconsideration in part*, 136 F. Supp. 3d 719 (M.D.N.C. 2015). As part of their purported deliberate indifference conduct, Plaintiff's Complaint alleges that Sheriff Peterkin and Major Revels have a "policy or customary practice of allowing medical services to be rendered by non-medial personnel." (Compl. at 39.) He further alleges that Southern Health Partners, HCDC's primary healthcare provider, "maintained an unconstitutional policy or customary practice" regarding prescription purchases (*see id.* at 37). The Court notes that this Court and other district courts in this circuit have recognized that "when contracting out medical care of inmates to third parties, local governments have a continuing obligation to ensure the provision of adequate inmate medical care under the Eighth Amendment." *Simmons*, 122 F. Supp. 3d at 266.

civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, HCDC Defendants again make this argument premised on their position that the majority of Plaintiff's allegations are time-barred. (Docket Entry 28 at 14.) However, considering the pleadings in their entirety, whether a constitutional violation has actually occurred remains unresolved. As such, the Court should reserve its determination as to whether HCDC Defendants are entitled to qualified immunity until after a more complete record is established. *See Ballard v. Keller*, No. 5:13-CT-3018-BO, 2015 WL 73931, at *4 (E.D.N.C. Jan. 6, 2015) (unpublished) ("Here, the record as it currently presents itself precludes a determination of qualified immunity."); *Walker v. Calhoun*, No. 1:12CV466 LO/JFA, 2013 WL 3894105, at *4 (E.D. Va. July 22, 2013) (unpublished) ("Here, then, until the issue of whether a violation of plaintiff's constitutional rights actually occurred is determined, consideration of whether defendants are entitled to qualified immunity for their actions is premature.").

17

## E. EXHAUSTION OF ADMINISTRATIVE REMEDIES

HCDC Defendants next assert that Plaintiff failed to exhaust his administrative remedies prior to filing the Complaint in this case. (Docket Entry 28 at 16-18.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson*, 407 F.3d at 676-77 (citing *Porter*, 534 U.S. at 524). However, an inmate is not required to allege the exhaustion of administrative remedies in his complaint. *Jones*, 549 U.S. at 216. Rather, failure to exhaust administrative remedies is an affirmative defense, *see id.*, and only when the "failure to exhaust is 'apparent from the face of [the] complaint' may the Court dismiss an action for failure to exhaust administrative remedies." *McClary v. Kalinski*, No. 5:18-CV-00102-MR, 2019 WL 3956150, at *3 (W.D.N.C. Aug. 21, 2019) (citing *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017)).

Here, it is not apparent from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. Plaintiff contends that he filed multiple grievances,[7] some of which were never responded to or never received. (*See* Compl. at 22-23.) Moreover, he states that "there is no appeal procedure available to be followed." (*Id.* at 23.) Taking Plaintiff's allegations as true, it appears that the complete grievance process was not available to him, (*see id.*), and thus he could not be expected to use it, *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (holding that the plaintiff is only required to exhaust "available" administrative remedies).

Moreover, although HCDC Defendants contend that Plaintiff filed no grievance after February 11, 2016, it is not expected that he continue filing grievances if the continuing violation doctrine is applicable here. *See Thompson v. Wexford Health Sources Inc.*, No. 19-CV-00288-SMY, 2020 WL 2526944, at *2 (S.D. Ill. May 18, 2020) (unpublished) (citing *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("[T]he continuing violation doctrine provides that prisoners do not need to file multiple, successive grievances when they are complaining about the same issue if it is continuing.")); *Ballard v. Keller*, No. 5:13-CT-3018-BO, 2015 WL 73931, at *2 (E.D.N.C. Jan. 6, 2015) (unpublished) (citation omitted) ("[I]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

In sum, since the failure to exhaust administrative remedies is an affirmative defense, HCDC Defendants cannot prevail based on the initial pleadings in this case. It is not plainly established that Plaintiff has failed to exhaust all available administrative remedies. Thus,

---

[7] Plaintiff contends that he filed grievances on 7-8-2015, 7-29-2015, 8-24-2015, 9-1-2015, 9-15-2015, and 2-11-2016. (*See* Compl. at 22, 23, 25, 29.) It should be noted, however, that only four of his grievances are attached to his Complaint. (*See id.* at 12-15.)

HCDC Defendants are not entitled to the dismissal of this action on this ground at this juncture.

## F. Plaintiff's State Law Claims

Lastly, HCDC Defendants seek dismissal of Plaintiff's state law claims for negligence and medical malpractice. HCDC Defendants assert that they are entitled to public officer's immunity in their individual capacity and governmental immunity in their official capacity. (Docket Entry 28 at 18-21.) Under the doctrine of public immunity, "a public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Schlossberg v. Goins,* 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000) (internal quotation and citation omitted). A public official "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313 (1984). Here, again at this juncture, Plaintiff has set forth allegations that, if true, may go beyond mere negligence into the realm of actions contrary to Sheriff Peterkin and Major Revels' official duties.[8] As such, determination of dismissal on this ground should be reserved for a later stage in litigation.

Dismissal is proper, however, for Plaintiff's state law claim for negligence against HCDC Defendants in their official capacity because said Defendants are entitled to

---

[8] The analysis for whether an officer is entitled to public officer's immunity is similar to that of whether an officer is entitled to qualified immunity. *See Stokes v. Harris*, No. 1:10CV935, 2014 WL 5149222, at *11 (M.D.N.C. Oct. 14, 2014) (unpublished).

20

governmental immunity. "Governmental immunity shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function." *Houpe v. City of Statesville,* 128 N.C.App. 334, 340, 497 S.E.2d 82, 87 (1998). "A municipality may waive its governmental immunity by participating in a local government risk pool or by purchasing liability insurance." *Pettiford*, 556 F. Supp. 2d at 525. Having failed to allege any waiver of governmental immunity, Plaintiff's state law negligence claim against HCDC Defendants in their official capacity should be dismissed. *Paquette v. Cty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) ("Plaintiff's complaint does not allege defendants waived their sovereign immunity. This Court has consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity.").

Lastly, dismissal is proper as to Plaintiff's state law claim for medical malpractice. Under North Carolina law, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j) which requires a plaintiff to include in his complaint an assertion that that an expert in the same field reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. *Simmons v. Shelton,* 1:13CV566, 2015 WL 2345593, at *4 (M.D.N.C. May 14, 2015) (unpublished); *see also* N.C. R. Civ. P. 9(j). Otherwise, facts must be alleged establishing negligence under the doctrine of *res ipsa loquitur.*[9] N.C. R. Civ. P. 9(j). A plaintiff's failure to comply with Rule 9(j)

---

[9] "The doctrine of *res ipsa loquitor* applies when (1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health Sys.,* 221 N.C.App. 416, 419, 727 S.E.2d 877, 879 (2012) (citation omitted); *see*

is grounds for dismissal of a state medical-malpractice claim filed in federal court. *See Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.,* 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); *Thigpen v. Ngo,* 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002) ("[M]edical malpractice complaints have a distinct requirement of expert certification with which plaintiffs must comply. Such complaints will receive strict consideration by the trial judge. Failure to include the certification necessarily leads to dismissal."). Here, Plaintiff has not complied with Rule 9(j), thus his state medical malpractice claim should be dismissed.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Judgment on the Pleadings (Docket Entry 27) be **GRANTED IN PART** to the extent Plaintiff's claims against Hoke County be dismissed, Plaintiff's state law negligence claim against Sheriff Peterkin and Major Revels in their official capacity be dismissed, and Plaintiff's state medical malpractice claim be dismissed. In all other aspects, Defendants' motion should be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

August 14, 2020
Durham, North Carolina

---

*also Muhammad v. United States,* No. 5:11–CT–3126–FL, 2012 WL 3957473, at*6 (E.D.N.C. Sept. 10, 2012) (unpublished).