UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:19-CV-00418-WO-JLW

| | |
|---|---|
| ROBERT LEWIS,<br>    Plaintiff,<br><br>v.<br><br>HOKE COUNTY, HUBERT PETERKIN,<br>SOUTHERN HEALTH PARTNERS, INC.,<br>NEKIA REVELS, KATHRYN MCKENZIE,<br>JANE DOE,<br>    Defendants | **MEMORANDUM OF LAW IN SUPPORT<br>OF SOUTHERN HEALTH PARTNERS,<br>INC.'S MOTION FOR SUMMARY<br>JUDGMENT** |

NOW COMES the Defendant, Southern Health Partners, Inc., and provides the Court with the following Memorandum of Law in Support of its Motion for Summary Judgment.

## STATEMENT OF THE CASE

This is an action by a prisoner alleging civil rights violations under 42 U.S.C. § 1983. Specifically, Plaintiff alleges that he was deprived of medical treatment during his incarceration at the Hoke County Detention Center in Raeford, North Carolina from October 2014 to February 2017. (Compl., ECF No. 1). Plaintiff initiated this action by the filing of a Complaint on April 19, 2019. (Compl., ECF No. 1). On June 24, 2019, Southern Health Partners, Inc. (hereinafter "SHP") timely filed its Answer to Plaintiff's Complaint. (Answer, ECF No. 18). SHP now moves for summary judgment.

## STATEMENT OF THE FACTS

Plaintiff Robert Lewis (hereinafter "Plaintiff") was incarcerated at the Hoke County Detention Center (hereinafter "the Jail") from October 2014 to February 2017. (Compl., ECF No. 1). During his incarceration, Plaintiff was seen by medical staff at the Jail on multiple occasions. (McKenzie Aff. Ex. 1).

In 2015, Nurse McKenzie began employment as a registered nurse with Southern Health Partners, Inc. (hereinafter "SHP") providing healthcare to inmates at the Jail. (McKenzie Aff. ¶ 3). From 2015 through 2016, Nurse McKenzie worked at the Jail Monday through Friday from 8:00 a.m. to approximately 7:30 p.m. (McKenzie Aff. ¶ 4). In addition to Nurse McKenzie and the other nursing staff at the Jail, Physician Assistant, Manuel Maldonado (hereinafter referred to as "P.A. Maldonado") came to the Jail once per week for the evaluation of patients, to review of medical records, and was also available via telephone to consult with nursing staff. (McKenzie Aff. ¶ 8). P.A. Maldonado was supervised by Dr. Guangbin Zeng, M.D. (SHP Resp. Pl.'s First Interrogatories and Request for Prod. Documents, Ex. 1).

Plaintiff was booked into the Jail on October 23, 2014. (Compl. ¶ 13). In July 2015, Plaintiff submitted his first sick call slip complaining of eye related complaints. (McKenzie Aff. ¶ 10). On July 8, 2015, Nurse McKenzie saw Plaintiff in medical in response to his sick call slip. (McKenzie Aff. ¶ 11). At the time he was seen in medical on July 8, 2015, Plaintiff complained of "no glasses" and "blisters in eye." (McKenzie Aff. ¶ 12). Nurse McKenzie evaluated Plaintiff's eyes at that time and did not see any blisters or abnormal growth in Mr. Lewis' eye. (McKenzie Aff. ¶ 12). In response to Plaintiff's accusations that Nurse McKenzie had vision problems after her evaluation of Plaintiff's eyes, the officer who escorted Plaintiff to medical also confirmed that he did not see any blisters or growth in Plaintiff's eyes. (McKenzie Aff. ¶ 12). Nurse McKenzie noted that Plaintiff did not need any therapy at that time, and she advised Plaintiff to notify medical staff of any changes and he verbalized his understanding. (McKenzie Aff. ¶ 11 ).

Following Nurse McKenzie's medical evaluation of Plaintiff, on July 8, 2015, she contacted detention center staff and attempted to retrieve Plaintiff's glasses. (McKenzie Aff. ¶

12). Nurse McKenzie was informed that Plaintiff's glasses were in the possession of the detective assigned to Plaintiff's criminal case investigation and Nurse McKenzie contacted the detective to retrieve Plaintiff's glasses. (McKenzie Aff. ¶ 12). Nurse McKenzie was advised by the detective that Plaintiff's glasses were held as evidence found at the scene of a crime and they could not be released. (McKenzie Aff. ¶ 12). On November 20, 2015, following her attempts to retrieve Plaintiff's glasses and receipt of confirmation that Plaintiff's glasses were part of the evidence in a criminal investigation and could not be returned, Nurse McKenzie contacted the Raeford Eye Clinic and scheduled Plaintiff an appointment on December 2, 2015, to be seen for his glasses related complaint and his complaint of "white matter" in his eye. (McKenzie Aff. ¶ 13). On November 24, 2015, Plaintiff's appointment with Raeford Eye Clinic was cancelled because Plaintiff was set to be in court in Cumberland County on that date. (McKenzie Aff. ¶ 14). On December 4, 2015, Nurse McKenzie rescheduled Plaintiff's appointment with Raeford Eye Clinic for December 15, 2015. (McKenzie Aff. ¶ 15).

Following Plaintiff's appointment at Raeford Eye Clinic on December 15, 2015, eyeglasses were ordered for Plaintiff and Plaintiff was prescribed Pataday eye drops. (McKenzie Aff. ¶ 16). Nurse McKenzie contacted Clinical Solutions Pharmacy to order the Pataday eye drops for Plaintiff. (McKenzie Aff. ¶ 17). On December 22, 20215, Plaintiff's glasses were delivered to the Raeford Eye Clinic. (McKenzie Aff. ¶ 18). That same day, Nurse McKenzie traveled to the Raeford Eye Clinic to pickup Plaintiff's glasses and provided them to Plaintiff that day. (McKenzie Aff. ¶ 18). On January 6, 2016, Nurse McKenzie understood that Clinical Solutions Pharmacy was unable to obtain Pataday eye drops and Clinical Solutions recommended an over-the-counter substitute eye drop.[1] (McKenzie Aff. ¶ 19). On January 7,

---

[1] Upon review of available medications from Clinical Solutions in 2015, Pataday eyedrops were available for order during that time. (*See* Ex. 1).

3

Case 1:19-cv-00418-WO-JLW   Document 84   Filed 09/23/22   Page 3 of 12

2016, Nurse McKenzie contacted Raeford Eye Clinic and advised of her understanding that Pataday eye drops could not be obtained by the Clinical Solutions Pharmacy. (McKenzie Aff. ¶ 19). At that time, Dr. Inman entered a verbal telephone order to substitute Plaintiff's prescription for Pataday eye drops with an over-the-counter allergy eye drop. (McKenzie Aff. ¶ 20). On January 7, 2016, an order was entered for Plaintiff to receive over-the-counter eye drops. (McKenzie Aff. ¶ 21). Plaintiff was provided his over-the-counter eye drops upon their receipt for independent use in his cell. (McKenzie Aff. ¶ 22).

On February 15, 2016, nursing staff responded to a Jail grievance submitted by the Plaintiff and specifically informed Plaintiff that the Pataday eye drops had been substituted for an over-the-counter antihistamine with the same effect, as ordered by Plaintiff's eye doctor. (Compl. ECF No. 1, Ex. D). On February 16, 2016, Plaintiff submitted a sick call slip, with a complaint that the Pataday eye drops were not ordered. (McKenzie Aff. ¶ 23). Plaintiff was seen for a follow-up appointment at the Raeford Eye Clinic on March 31, 2016. (McKenzie Aff. ¶ 24). On July 27, 2016, an additional order was entered to re-fill Plaintiff's Care All lubricating eye drops for 90 days. (McKenzie Aff. ¶ 25).

In addition to this action, in 2017, Plaintiff filed another lawsuit in the Middle District, related to his incarceration at the Hoke County Detention Center. *See Robert Lewis v. Hoke County, et. al.*, 1:17-cv-00987-WO-JLW (M.D.N.C.). In that case Plaintiff complained of the medical care provided to him during his incarceration at the Hoke County Detention Center during the same time period as the issues in the instant case. The Court granted summary judgment in favor of all defendants as to Plaintiff's claims on February 1, 2022. *See Robert Lewis v. Hoke Couty, et. al.*, 1:17-cv-00987-WO-JLW (ECF No. 126). The Fourth Circuit affirmed the dismissal of Plaintiff's claims in a *per curiam* opinion entered on May 24, 2022. In

this previously filed action, Plaintiff's deposition was taken as part of the pre-trial discovery process. A copy of the portions of Plaintiff's deposition transcript that relate to the instant action is attached hereto as Exhibit 1. During his deposition, Plaintiff testified with regard to the issues presented in the instant case. (*See generally* Ex. 2). Specifically, Plaintiff testified that he has chronic dry eye and chronic eye allergy and his continued treatment, as of the date of his deposition has been generic Visine eye drops. (Ex. 2 at 78, 80). Plaintiff further testified that he received his prescription eyeglasses from Nurse McKenzie and that as of the date of his deposition he does not have any pain in his eyes as he takes generic Visine eye-drops. (Ex. 2 at 83).

## STATEMENT OF QUESTIONS PRESENTED

I. **CAN PLAINTIFF SURVIVE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR HIS CLAIMS PURSUANT TO 42 U.S.C. § 1983 RELATED TO HIS EYE COMPLAINTS?**

## ARGUMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no dispute as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden rests with the moving party to demonstrate the absence of a material fact. *RGI, Inc. v. Unified Indus., Inc.*, 963 F. 2d 658, 661 (4th Cir. 1992). Once the moving party demonstrates an absence of material fact, the party opposing the properly supported motion for summary judgment cannot rest upon mere allegations or denials of the pleading, but must set forth facts demonstrating a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. There is no genuine issue of material fact requiring a trial

5

unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

## I. PLAINTIFF'S CLAIMS AGAINST SOUTHERN HEALTH PARTNERS, INC. RELATED TO HIS EYE COMPLAINTS CANNOT SURVIVE SUMMARY JUDGMENT.

42 U.S.C. § 1983 allows a person who is deprived of a constitutional right to bring an action against a violating individual who acted under color of state law. 42 U.S.C. § 1983. However, a private corporation may not be held liable under § 1983 when the liability is based only on *respondeat superior*. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). "[A] private corporation is liable under §1983 *only* when an official policy or custom of a corporation calls the alleged deprivation of federal rights." *Huntley v. Burris*, No. 1:18-CV-744, Order at 2 (M.D.N.C. Mar. 4, 2019) (quoting *Austin*, 195 F.3d at 728 (emphasis in original)). "An action under § 1983 must be dismissed if the Plaintiff does not identify in his or her pleadings a policy or procedure of the corporate defendant that proximately caused the violation of the rights." *Huntley v. Burris*, No. 1:18-CV-744, Order at 2 (citing *Lagana v. Wexford Health*, No. PJM 17-1686, 2018 WL 3970472, *9 (D. Md. Aug. 20, 2018); *Barrett v. Bd. of Educ. of Johnston Cty., N.C.*, 13 F. Supp. 3d 502, 209-10 (E.D.N.C. 2014)).

Not every alleged injury suffered by a prisoner "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825 (1994). "In order to state a cognizable claim [under the Constitution], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Questions of medical judgment generally are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (citation omitted). Additionally, in order to state a claim for deprivation of a constitutional right an

6

inmate "must provide evidence of a serious or significant physical or emotional injury." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (citing *Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993) (alteration in original) (quotation omitted)).

In the present case, Plaintiff's baseless, non-specific, allegation that a policy of SHP prohibited medical staff from purchasing prescriptions which were not covered by the company's insurance cannot survive summary judgment. (*See* Compl.¶¶ 83). Further, Plaintiff's baseless allegation of understaffing of medical staff at the Jail cannot survive summary judgment. (*See* Compl.¶¶ 84).

Plaintiff does not and cannot identify or present any evidence as to any specific policy of SHP to support his general allegations and Plaintiff's general allegations cannot amount to a deprivation of constitutional rights here. As indicated by the referenced Affidavits, medical records, discovery responses, and admissions on the part of Plaintiff himself, it is clearly established that there is not in existence a policy of SHP that prohibits the ordering of prescriptions, such as Pataday, and Pataday eyedrops were available for order. (*See* Ex. 1). Additionally, Plaintiff cannot present any evidence of understaffing of medical staff at the Jail, and despite Plaintiff's contentions the undisputed evidence shows that there was physician supervision over the care provided to inmates at the Jail, by Dr. Guangbin Zeng, M.D., the supervising physician for P.A. Maldonado. (*See* Ex. 1). As such, Plaintiff has simply made baseless allegations without any supporting evidence, which cannot survive summary judgment. The undisputed evidence shows that there was not a policy or practice by SHP to prohibit ordering prescription medications such as Pataday. (Ex. 1). Further, the Jail was appropriately and adequately staff by nursing staff and P.A. Maldonado, along with Dr. Guangbin Zeng, M.D., who was the supervising physician for P.A. Maldonado. (Ex. 1).

Additionally, undisputed evidence establishes that Plaintiff was appropriately evaluated for his eye related complaints and upon Nurse McKenzie's understanding that Pataday eyedrops were not available for order by Clinical Solutions pharmacy, Plaintiff's eye doctor, Dr. Inman, ordered a substitute eyedrop, which Plaintiff was consistently provided. (McKenzie Aff., Ex. 1).

Here, On July 8, 2015, promptly after receipt of Plaintiff's sick call, Plaintiff was seen by Nurse McKenzie in medical for an evaluation of his eye complaints. (McKenzie Aff. ¶ 11). Nurse McKenzie evaluated Plaintiff and was not able to see any abnormal growth or blisters in Plaintiff's eyes at that time. (McKenzie Aff. ¶ 11). Following her evaluation, Nurse McKenzie then attempted to retrieve Plaintiff's glasses by contacting the detention center staff and the detective working Plaintiff's criminal case. (McKenzie Aff. ¶ 12). Nurse McKenzie was informed by the detective assigned to Plaintiff's criminal investigation that the glasses could not be returned as they were held as evidence found at the scene of the crime and she accordingly, scheduled Plaintiff for an appointment with Raeford Eye Clinic to be seen for his glasses complaint and white matter complaint. (McKenzie Aff. ¶¶ 13-15).

Plaintiff was seen by Dr. Inman with Raeford Eye Clinic on December 15, 2015 and following Plaintiff's appointment, glasses were ordered for Plaintiff and Plaintiff was prescribed Pataday eyedrops. (McKenzie Aff. ¶ 16). One week after his appointment with Dr. Inman, Plaintiff's glasses were delivered to Raeford Eye Clinic and on that same day Nurse McKenzie picked up Plaintiff's glasses and provided them to him. (McKenzie Aff. ¶ 18). At that time, Plaintiff denied any more problems. (McKenzie Aff. ¶ 18).

With regard to Plaintiff's eye drops, Nurse McKenzie promptly contacted the Clinical Solutions pharmacy to order Plaintiff's Pataday eye drops and Nurse McKenzie was under the understanding that Clinical Solutions pharmacy was unable to obtain Pataday eye drops.

(McKenzie Aff. ¶¶ 17, 19). Nurse McKenzie, then, within twenty-four hours, contacted Raeford Eye Clinic and received a telephone verbal order from Dr. Inman to substitute the Pataday eye drops for an over-the-counter eye drop. (McKenzie Aff. ¶ 20). On that same date, an order was entered for Plaintiff to receive over-the-counter eye drops and Plaintiff was provided the eye drops for independent use in his cell upon their receipt by medical staff. (McKenzie Aff. ¶¶ 21-22). Upon further review, it has been determined Pataday eyedrops were available for order, however, Nurse McKenzie's understanding of their unavailability and Plaintiff's receipt of an adequate substitute, as ordered by the specialist, Dr. Inman, does not give rise to deliberate indifference or a violation of Plaintiff's constitutional rights, as Nurse McKenzie contacted Dr. Inman and received an appropriate substitute prescription and Plaintiff was appropriately treated with ordered eyedrops as directed by Dr. Inman. Further, Plaintiff was seen for additional follow-up with the Raeford Eye Clinic and addition orders were entered refilling Plaintiff's eye drops. (McKenzie Aff. ¶¶ 24-25).

Additionally, Plaintiff's Complaint is completely devoid of any allegation of a serious injury, or injury at all, supporting his claim for deprivation of a constitutional right. Further, in his previous deposition, Plaintiff has expressly testified that he does not suffer any permanent injury related to his eyes, and his eye complaints have resolved with the treatment of eye drops and glasses. (Ex. 1 at 83).

Plaintiff was seen and evaluated by medical staff promptly following his first eye related complaint, Plaintiff was given an appropriate evaluation of his eyes, Nurse McKenzie attempted to obtain Plaintiff's glasses, and subsequently scheduled Plaintiff to see a specialist for his eye related complaints. Plaintiff was then ordered glasses and promptly provided his glasses upon their receipt and provided eyedrops as ordered by the specialist, Dr. Inman. There is no policy or

procedure by SHP to deny prescription medications, such as Pataday, and the Jail was sufficiently staffed and provided Plaintiff appropriate medical treatment during his incarceration. (*See* McKenzie Aff., Ex. 1; Ex. 1). Plaintiff was not deprived of any constitutional right during his incarceration at the Jail, and Plaintiff suffered no cognizable injury as a result of any of the allegations contained within his Complaint against SHP that would give rise to a claim for deprivation of a constitutional right.

Plaintiff's 42 U.S.C. § 1983 claims against SHP as related to his eye complaints cannot survive summary judgment. As such, summary judgment should be granted in favor of SHP.

## **CONCLUSION**

For the reasons stated herein, Defendant Southern Health Partners, Inc., respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint, with prejudice.

This the 23rd of September, 2022.

Respectfully submitted,

/s/ Jay C. Salsman
N.C. State Bar Number: 34187
/s/A. Ruthie Sheets
N.C. State Bar Number: 52397
Email: jcs@harriscreech.com
Email: ars@harriscreech.com
Harris, Creech, Ward & Blackerby, P.A.
325 Pollock Street
P. O. Drawer 1168
New Bern, NC 28563-1168
Telephone: (252) 638-6666
Facsimile: (252) 638-3542
Attorneys for Defendant Southern Health Partners, Inc.
   and Kathryn McKenzie

**LOCAL RULE 7.3(d)(1) CERTIFICATION**

The undersigned hereby certifies that this Memorandum does not exceed 6,250 words and is therefore compliant with Local Rule 7.3(d)(1). More specifically, the body of the Memorandum, headings and footnotes comprise 2,847 words.

This the 23rd of September, 2022.

Respectfully submitted,

/s/ Jay C. Salsman
N.C. State Bar Number: 34187
/s/A. Ruthie Sheets
N.C. State Bar Number: 52397
Email: jcs@harriscreech.com
Email: ars@harriscreech.com
Harris, Creech, Ward & Blackerby, P.A.
325 Pollock Street
P. O. Drawer 1168
New Bern, NC 28563-1168
Telephone: (252) 638-6666
Facsimile: (252) 638-3542
Attorneys for Defendant Southern Health Partners, Inc. and Kathryn McKenzie

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF SOUTHERN HEALTH PARTNERS, INC.'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system. I further certify that I have served the foregoing document on the following non-CM/ECF participant by depositing a copy of the same in the United States Postal Service via first class mail and addressed as follows:

> Mr. Robert Lewis
> #0240864
> Nash Correctional Institution
> P. O. Box 600
> Nashville, NC 27856

This the 23rd day of September, 2022.

> /s/ Jay C. Salsman
> N.C. State Bar Number: 34187
> /s/ A. Ruthie Sheets
> N.C. State Bar Number: 52397
> Email: jcs@harriscreech.com
> Email: ars@harriscreech.com
> Harris, Creech, Ward & Blackerby, P.A.
> 325 Pollock Street
> P. O. Drawer 1168
> New Bern, NC 28563-1168
> Telephone: (252) 638-6666
> Facsimile: (252) 638-3542
> Attorneys for Defendant Southern Health Partners, Inc. and Kathryn McKenzie

/8419

12

Case 1:19-cv-00418-WO-JLW   Document 84   Filed 09/23/22   Page 12 of 12